ROLFE ELECTRIC CO. et al. v. STERLING ELECTRIC CO. et al.

(Circuit Court, S. D. New York. January 14, 1902.)

PATENT—INFRINGEMENT.
    The Barrett patent, No. 445,217, for a thermal cut-out, *held* not infringed.

In Equity.

Seward Davis, A. Miller Belfield, and Charles A. Brown, for plaintiffs.

Charles C. Bulkley, for defendants.

WHEELER, District Judge. This suit is brought for alleged infringement of patent No. 445,217, dated January 27, 1891, and granted to Albert Barrett, for a thermal cut-out, and of another patent withdrawn from this case. In the specification of the remaining patent, the inventor says:

"The invention comprises an attenuated and relatively fragile portion of the circuit; a strong spring, or an equivalent device, capable, under certain conditions, of exerting a strong and sudden force upon the said fragile portion, and of breaking the same, and thus causing a wide gap in the continuity of said circuit; a normal support for the said spring, whereby the

said fragile section is ordinarily freed from the tension thereof; and means, comprising a ball or mass of matter, solid and hard ordinarily, but capable of fusing, softening, or fracture under a moderate degree of heat when closely applied, which I term a 'heat-responsive mass,' and a heat-concentrating coil of the said attenuated conductor closely associated therewith (being, in fact, embedded therein), for enabling the said spring to come promptly and forcibly into action, and to break or tear away the said fragile conducting section to open the circuit. The heat of the circuit, being concentrated by the embedded convolutions, softens, breaks, or fuses the wax, and the spring which exerts a constant pull on the loop held thereby acts promptly to pull out the end loop to break the fine wire, and consequently the circuit, and thus to remove the danger. The spring itself, released by the softening of the wax, flies back with great force to the position indicated in Fig. 4. In fact, so promptly does it fly back that the wire is not merely broken, but usually is also torn completely away from its fastenings, leaving a gap in the circuit as wide as the distance between the binding screws. I have made these appliances sufficiently sensitive to break the circuit under a current developed on short circuit by a single Leclanché cell, and with greater currents they act so promptly that the wax ball seems rather to explode than to soften."

The claims particularly relied upon now are:

"(1) A thermal protector for an electric circuit, and apparatus included therein, comprising a ball or mass of material solid and hard at a normal temperature, but capable of fusing or softening when heated; a loop or hook having one end embedded in the said mass; a fixed ring or bracket for the said mass and its dependent hook; an attenuated and relatively fragile section of circuit conductor extending between terminals, and having a portion of its length coiled within the substance of said heat-responsive mass, and adapted to serve as a heat concentrator therefor; and a power device, such as a spring or weight, normally engaged and supported by the said loop, and held in tension thereby, and adapted to break the attenuated conductor when freed by the development of heat in the embedded coil section of said conductor,—substantially as described.

"(2) In a thermal protector for electric circuits, an attenuated and relatively fragile section of circuit conductor, a portion of which is coiled round the shank of a loop support, and embedded within a mass or ball of material adapted to become plastic when warmed, combined with a rigid support for said mass, and a spring engaged by said loop, and normally held in tension thereby, but adapted to overcome the same and to tear the said loop and the coils secured thereto from the heat-responsive mass on the passage of an unduly strong current through the said coils."

The defendants' cut-out consists of a stem and core, connected by solder in a coil of wire, between two posts, one of which is a spring pulling upon the solder, away from the other, all in the circuit. When an excessive current heats the wire and softens the solder, it yields to the spring, which pulls the stem away from the core and breaks the circuit. The use of a coil in or about softenable material holding a spring to release the spring and break the circuit by the heat of an excessive current was well known in various arrangements before this invention. Barrett was not an inventor of a cut-out composed of such devices, but of his arrangement of such devices in a cut-out. Railway Co. v. Sayles, 97 U. S. 554, 24 L. Ed. 1053. The defendants use the same or similar devices, but in different form, arrangement, and mode of operation. The part of the specification quoted and these claims show distinctly that the invention patented is the arrangement of the parts so that the excessive current will heat the coil, and soften the material holding it, and release the

spring, which will rupture the coil and break the circuit. In the defendants' arrangement the excessive current heats the coil and weakens the solder so it will yield to the spring, which pulls it apart and breaks the circuit. The parts of the arrangements are different, and they do not do the same thing in the same way. That arrangements of the same or like devices shown in prior patents would not be commercially operative does not vary this conclusion. This patentee improved their defects in his way, but that did not prevent others from improving the same or other defects in their way, so long as they do not take his. The alleged infringement is not found, and accordingly the plaintiffs do not appear to be entitled to any relief.

Bill dismissed.